1

2

3

4

5

6

7

8                          IN THE UNITED STATES DISTRICT COURT

9                         FOR THE EASTERN DISTRICT OF CALIFORNIA

10   ANTHONY LORAN PERKINS,

11            Plaintiff,                          No. CIV S-06-0760 DFL DAD P

12        vs.

13   SCOTT KERNAN, et al.,                        FINDINGS AND RECOMMENDATIONS

14            Defendants.

15   _____/

16            Plaintiff is a state prisoner proceeding pro se and in forma pauperis with an action

17   filed pursuant to 42 U.S.C. § 1983.  On February 28, 2007, defendants Hooper, Johnson-Dovey,

18   Penner, Van Cor, and Wallace filed a motion to dismiss the complaint pursuant to unenumerated

19   Rule 12(b) of the Federal Rules of Civil Procedure due to plaintiff's failure to exhaust available

20   administrative remedies prior to bringing this action.   Plaintiff has filed a timely opposition.

21   Defendants have filed a reply.  Plaintiff has also filed an unauthorized response to defendants'

22   reply.  See E.D. Local Rule 78-230(m).

23                                  **PLAINTIFF'S CLAIMS**

24            Plaintiff alleges that on June 8, 2005, he was shot with a block gun in the lower

25   part of his left leg during a melee at CSP-Sacramento.  He alleges that he sustained fractures to

26   his left fibula and claims that he now has bone fragments and spurs in his left heel.  (Compl. at

1

1   1.)  Plaintiff alleges that defendant Hooper failed to properly diagnose his injuries, labeling them

2   as contusions or bruises.  (Compl. at 3.)  Similarly, he alleges that defendant Penner

3   characterized his injuries as mere contusions until defendant Penner viewed x-rays which

4   revealed that the injury suffered was more serious.  (Compl. at 5.)  Plaintiff alleges that defendant

5   Johnson-Dovey improperly accused him of merely seeking drugs when he filed a 602 form for

6   medical assistance.  (Compl. at 5.)  Plaintiff alleges that defendant Van Cor assured him that his

7   medical needs would be met, but he "failed in response, responsibility, and resolution."  (Compl.

8   at 5.)  Specifically, plaintiff claims that defendant Van Cor failed to summon medical care for

9   him when Van Cor knew he needed immediate attention.  (Compl. at 2.)  Plaintiff also alleges

10  that defendant Wallace failed to call medical aid after plaintiff informed him that he could not

11  walk and instead forced plaintiff to walk as best as he could to a holding cell.  (Compl. at 4 & 5.)

12  Plaintiff alleges that walking is now difficult and he can no longer run or jump.  Plaintiff

13  concludes that defendants have not provided him with adequate medical care from June 8, 2005

14  through the present in violation of the Eighth Amendment.  Plaintiff requests compensatory and

15  punitive damages.

16                      **DEFENDANTS' MOTION TO DISMISS**

17  I.  Defendants' Motion

18          Defendants allege that plaintiff failed to exhaust the four grievances he filed after

19  he was allegedly injured on June 8, 2005, and before April 7, 2006, the date plaintiff filed this

20  lawsuit.  (Defs.' Mot. to Dismiss at 6.)  Defendants have attached to their motion as exhibits

21  declarations by K. Sampson, an Appeals Coordinator at California Correctional Institution (CCI)

22  and N. Grannis, Chief of Inmate Appeals of the California Department of Corrections and

23  Rehabilitation.

24          A.  Appeal SAC-05-01686/CCI-06-0148

25          Defendants allege that, on June 26, 2005, plaintiff filed an administrative

26  grievance and requested medical treatment for injuries suffered during the melee.  The Appeals

                                        2

1    Office at CSP-Sacramento assigned it log number SAC-05-01686 and granted it in part at the

2    informal level of review.  Defendants allege that plaintiff received medical care and was

3    scheduled to see a doctor for further diagnosis and treatment.  (Defs.' Mot. to Dismiss at 6.)

4            Defendants allege that, on August 14, 2005, plaintiff appealed the grievance to the

5    first level of review, requesting further diagnosis, medication, and treatment.  The Appeals Office

6    at CSP-Sacramento granted the appeal in part and noted that plaintiff would be further examined

7    upon transfer to CCI.  Upon transfer to CCI, the Appeals Office there assigned plaintiff's appeal

8    log number CCI-06-0148.  (Defs.' Mot. to Dismiss at 6.)

9            Defendants allege that, on November 3, 2005, plaintiff submitted a grievance at

10   the second level of review, requesting additional medical treatment for his heel.  On February 23,

11   2006, the Appeals Office denied the request, though, CCI medical staff noted that the necessity

12   for additional treatment would be evaluated after plaintiff completed a consultation with a

13   podiatrist.  (Defs.' Mot. to Dismiss at 6.)

14           Defendants allege that, in March 2006, plaintiff submitted an appeal to the

15   director's level.  The Inmate Appeals Branch denied this director's level appeal on May 24, 2006,

16   more than one month after plaintiff filed his complaint in this action.  (Defs.' Mot. to Dismiss at

17   6; Grannis Decl. at 3.)

18           B.  Appeal CCI-05-3080

19           Defendants allege that, on November 16, 2005, plaintiff filed an administrative

20   grievance, requesting additional diagnosis for his heel injury.  He also inquired as to whether his

21   injury should be considered a disability.  (Defs.' Mot. to Dismiss at 7.)  On October 31, 2005, the

22   Appeals Office assigned plaintiff's appeal log number CCI-05-3080 and granted it in part at the

23   first level of review.  (Sampson Decl. at 3.)  Plaintiff appealed to the second level of review, and

24   on December 20, 2005, the Appeals Office again granted it in part.  (Defs.' Mot. to Dismiss at 7;

25   Sampson Decl. at 3.)

26   /////

1      Defendants allege that, on January 31, 2006, the Inmate Appeals Branch received

2  plaintiff's director's level appeal, and granted it in part on June 28, 2006,[1] more than two months

3  after plaintiff filed his complaint in this action.  (Grannis Decl. at 3.)  After investigations

4  regarding plaintiff's care, a modification order was granted on July 7, 2006.  The order indicated

5  that plaintiff's requests for surgery, a cane, and a lower-bunk chrono would be evaluated after he

6  completed his consult with a podiatrist on August 10, 2006.  (Defs.' Mot. to Dismiss at 7;

7  Grannis Decl. at 3.)

8          C.  Appeal CCI-0-06-0295

9      Defendants allege that, on December 5, 2005, plaintiff filed an emergency

10  administrative grievance, requesting to see an outside orthopedist and pursue allegations of

11  misconduct against CCI and CSP-Sacramento medical staff.  The grievance bypassed the

12  informal level and the first formal level of review.  At the second level of review, the Appeals

13  Office addressed plaintiff's appeal as a medical issue, not a staff complaint.  After conducting

14  investigation, the appeal was granted as to medical care but denied as to the allegations of

15  medical malpractice on June 21, 2006.  Plaintiff did not seek review at the director's level with

16  regard to this grievance.  (Defs.' Mot. to Dismiss at 7.)

17  /////

18

19      [1]The Inmate Appeals Branch received plaintiff's appeal, CCI-05-3080, on January 31,
20  2006, but returned it to the Appeals Coordinator at CCI to complete section G, describing the
   second level reviewer's action.  Chief Grannis instructed the Appeals Coordinator to complete
21  and return the documents to the Inmate Appeals Branch by March 2, 2006.  (Pl.'s Opp'n to
   Defs.' Mot. to Dismiss, Ex. D at 12.)  That same day, Chief Grannis sent a letter to plaintiff,
22  informing him that the Inmate Appeals Branch had received plaintiff's appeal and forwarded it to
   the Appeals Coordinator at CCI for further review.  Chief Grannis explained that they anticipated
23  CCI would complete further action and return the materials to the Inmate Appeals Branch by
   March 2, 2006.  Chief Grannis explained that plaintiff would receive resolution from the Inmate
24  Appeals Branch after they received the materials back from CCI.  (Compl., Ex. E.)  For reasons
   that are unclear, Chief Grannis sent another letter to plaintiff on May 11, 2006, stating that his
25  appeal had been rejected due to time constraints.  The letter also stated that a similar letter had
   already been mailed to plaintiff on April 28, 2007.  The contradictory letters help explain the
26  lengthy period that passed from the time plaintiff submitted his director's level appeal to the time
   plaintiff received a director's level decision.

4

1        D.  Appeal CCI-0-06-229

2        Defendants allege that, on January 26, 2006, plaintiff filed his fourth grievance,

3   requesting medical diagnosis, insoles for his shoes, and a lower-bunk chrono.  Originally,

4   plaintiff had filed this grievance as a reasonable modification or accommodation request.  The

5   Appeals Office granted it in part at the first formal level of review.  (Sampson Decl. at 3.)

6   Plaintiff appealed to the second level of review, and the Appeals Office again granted it in part

7   but denied plaintiff's request for insoles and the lower-bunk chrono pending the results of his

8   consultation with the podiatrist.  (Defs.' Mot. to Dismiss at 7.)

9        In light of this history of grievances, defendants conclude that plaintiff's

10  complaint must be dismissed due to his failure to exhaust administrative remedies since plaintiff

11  failed to pursue any of his appeals to completion through the director's level of review before

12  filing this action.

13  II.  Plaintiff's Opposition

14       Plaintiff claims that he exhausted his administrative grievances and maintains that

15  the problems and violations he complained of had been corrected and needed no further

16  resolution.  (Pl.'s Opp'n to Defs.' Mot. to Dismiss at 11.)  Plaintiff argues that as long as an

17  appeal has been granted at one of the levels of review, the exhaustion rule is satisfied.  First,

18  plaintiff points to the instruction form for filing a § 1983 complaint.  He argues that the form

19  states that the administrative grievance process is completed if: "(1) your appeal was granted at

20  one of the levels of review, or (2) you pursued your appeal to the final level of review available."

21  (Pl.'s Opp'n to Defs.' Mot. to Dismiss at 3 & 4-5, Ex. A.)  Plaintiff notes that he exhausted

22  Appeal SAC-05-01686/CCI-06-0148 because the appeal was granted at the informal level of

23  review.  (Pl.'s Opp'n to Defs.' Mot. to Dismiss at 3, Ex. B.)  Plaintiff also contends that the same

24  appeal was granted at the first formal level of review.  (Pl.'s Opp'n to Defs.' Mot. to Dismiss at

25  3, Ex. B.)  Plaintiff claims that he continued to pursue appeals through the administrative

26  /////

1  grievance process to the director's level only in hopes of eventually obtaining proper medical

2  care.  (Pl.'s Opp'n to Defs.' Mot. to Dismiss at 4.)

3            Plaintiff also argues that the defendants forfeited or waived their failure to exhaust

4  defense.  In this regard, plaintiff notes that defendants screened his grievance numbered SAC-05-

5  01686/CCI-06-0148 on November 14, 2005 and rejected it with the CCI Appeals Coordinator

6  telling him that he needed to mail his appeal to CSP-Sacramento.  (Pl.'s Opp'n to Defs.' Mot. to

7  Dismiss, Ex. E at 22.)  Plaintiff also contends that defendants violated California Code of

8  Regulations title 15, section 3084.6 in processing grievance SAC-05-01686/CCI-06-0148

9  because they took forty-one days to respond to plaintiff's second level appeal instead of the

10  twenty days as provided for in the regulation.  (Pl.'s Opp'n to Defs.' Mot. to Dismiss at 10.)

11  III.  Defendants' Reply

12            In reply, defendants reiterate that plaintiff has failed to properly exhaust any of his

13  grievances before filing this action.  They claim that by appealing his grievance to the second and

14  third levels of review, albeit after filing this lawsuit, plaintiff acknowledges that his medical

15  needs had not been fully met and that his claims had not been exhausted.  (Defs.' Reply at 3-4.)

16  Defendants note that plaintiff cannot "have his cake and eat it too" by arguing that after having

17  received unfavorable results from those appeals to the second and third levels of review, those

18  results should now be ignored and his grievance should be treated as having been exhausted at

19  the first level of review.  (Defs.' Reply at 4.)

20  IV.  Legal Standards Applicable to a Motion to Dismiss Pursuant to Non-Enumerated Rule 12(b)

21            By the Prison Litigation Reform Act of 1995 (PLRA), Congress amended 42

22  U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions

23  under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail,

24  prison, or other correctional facility until such administrative remedies as are available are

25  exhausted."  42 U.S.C. § 1997e(a).  The exhaustion requirement "applies to all inmate suits about

26  /////

1  prison life, whether they involve general circumstances or particular episodes, and whether they

2  allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002).

3            The Supreme Court has ruled that exhaustion of prison administrative procedures

4  is mandated regardless of the relief offered through such procedures. Booth v. Churner, 532 U.S.

5  731, 741 (2001). The Court has also cautioned against reading futility or other exceptions into

6  the statutory exhaustion requirement. Id. at 741 n.6. Because proper exhaustion is necessary, a

7  prisoner cannot satisfy the PLRA exhaustion requirement by filing an untimely or otherwise

8  procedurally defective administrative grievance or appeal. Woodford v. Ngo, __ U.S. __, 126 S.

9  Ct. 2378, 2382 (2006).

10           In California, prisoners may appeal "any departmental decision, action, condition,

11  or policy which they can demonstrate as having an adverse effect upon their welfare." Cal. Code

12  Regs. tit. 15, § 3084.1(a). Most appeals progress from an informal review through three formal

13  levels of review. See Cal. Code Regs. tit. 15, § 3084.5. A decision at the third formal level, also

14  referred to as the director's level, is not appealable and will conclude a prisoner's administrative

15  remedy. Cal. Code Regs. tit. 15, §§ 3084.1(a) and 3084.5(e)(2). A California prisoner is

16  required to submit an inmate appeal at the appropriate level and proceed to the highest level of

17  review available before filing suit. Butler v. Adams, 397 F.3d 1181, 1183 (9th Cir. 2005);

18  Bennett v. King, 293 F.3d 1096, 1098 (9th Cir. 2002).

19           The PLRA exhaustion requirement is not jurisdictional but rather creates an

20  affirmative defense that a defendant may raise in a non-enumerated Rule 12(b) motion. Jones v.

21  Bock, __ U.S.__, __, 127 S. Ct. 910, 921 (2007) ("[I]nmates are not required to specially plead or

22  demonstrate exhaustion in their complaints."); Wyatt v. Terhune, 315 F.3d 1108, 1117-19 & nn.9

23  & 13 (9th Cir.), cert. denied sub nom. Alameida v. Wyatt, 540 U.S. 810 (2003). The defendant

24  bears the burden of raising and proving the absence of exhaustion. Wyatt , 315 F.3d at 1119. "In

25  deciding a motion to dismiss for a failure to exhaust nonjudicial remedies, the court may look

26  beyond the pleadings and decide disputed issues of fact." Id. at 1119-20. "I[f] the district court

1   looks beyond the pleadings to a factual record in deciding the motion to dismiss for failure to

2   exhaust–a procedure closely analogous to summary judgment–then the court must assure that

3   [the prisoner] has fair notice of his opportunity to develop a record."[2]  Id. at 1120 n.14.  When

4   the district court concludes that the prisoner has not exhausted administrative remedies on a

5   claim, "the proper remedy is dismissal of the claim without prejudice."  Id. at 1120.  See also

6   Lira v. Herrera, 427 F.3d 1164, 1170 (9th Cir. 2005), cert. denied ___U.S.___, 127 S. Ct. 1212

7   (2007).  On the other hand, "if a complaint contains both good and bad claims, the court proceeds

8   with the good and leaves the bad."  Jones, 127 S. Ct. at 924.

9   V.  Discussion

10           The Prison Litigation Reform Act requires a prisoner to exhaust his administrative

11   remedies as long as the administrative authorities can take some action in response to the

12   complaint.  See Booth v. Churner, 532 U.S. 731, 733-34 (2001); see also Brown v. Valoff, 422

13   F.3d 926, 935 (9th Cir. 2005) ("The obligation to exhaust 'available' remedies persists as long as

14   some remedy remains 'available.").

15           In Booth, the plaintiff claimed that correction officers violated his Eighth

16   Amendment right to be free from cruel and unusual punishment by using excessive force against

17   him.  Booth sought injunctive relief, including transfer to another prison, and monetary relief.

18   Booth acknowledged that the prison's grievance process could address his excessive force

19   complaints, but he maintained that it could not provide the monetary relief he requested.  Id. at

20   734.  The Court first noted that the PLRA states "[n]o action shall be brought with respect to

21   prison conditions under section 1983 . . . until such administrative remedies as are available are

22   exhausted."  Id. at 736.  The Court explained that administrative remedies are not available if the

23   relevant administrative officials lack the authority to provide any relief or to take any action in

24

25           [2] Plaintiff was notified of the requirements for opposing a motion to dismiss brought
    pursuant to non-enumerated Rule 12(b) on November 28, 2006.  (Order filed Nov. 28, 2006 at 3-
26   4.)

1  response to a prisoner's complaint.  However, the Court rejected Booth's argument that

2  administrative remedies are not available if the administrative officials have the authority to take

3  some action in response to the complaint but not the action the prisoner demands.  The Court

4  explained that "an inmate must exhaust irrespective of the forms of relief sought and offered

5  through administrative avenues" and "regardless of the fit between a prisoner's prayer for relief

6  and the administrative remedies possible."  Booth, 532 U.S. at 739 & 741 n.6.  The Court noted

7  that it "will not read futility or other exceptions into statutory exhaustion requirements where

8  Congress has provided otherwise."  Id. at 741 n.6.

9          In the present case, plaintiff filed his complaint on April 7, 2006, more than one

10 month before he appealed grievance SAC-05-01686/CCI06-0148 to the director's level and more

11 than two months before he completed the director's level of review on grievance CCI-0-05-3080.

12 Under the PLRA exhaustion requirement, plaintiff was required to appeal his grievance through

13 the director's level before he filed this action because administrative remedies were "available"

14 to him.  Whether administrative remedies are "available" hinges on whether the relevant

15 administrative officials have the authority to take some action, despite the fact that they are

16 unable to provide an inmate with the form of relief he requests.  Booth, 532 U.S. at 741.  As in

17 Booth, in this case prison officials at the director's level had the authority to take action in

18 response to plaintiff's complaint of inadequate medical care.  In fact, at the director's level prison

19 officials did just that in issuing decisions on two of plaintiff's appeals.[3]

20         Plaintiff's claim that he was not required to exhaust appeal SAC-05-01686/

21 CCI06-0148 any further because the problems he complained of had been corrected and needed

22 no further resolution is unpersuasive.  As defendants argue, plaintiff's actions contradict his

23

24      [3]  In this regard, on May 24, 2006, plaintiff's appeal SAC-05-01686/CCI06-0148 was
denied at the director's level with a finding that plaintiff had been provided with medical care in
accordance with departmental regulations.  (Pl.'s Opp'n to Defs.' Mot. to Dismiss, Ex. E at 35.)
25 On June 28, 2006, plaintiff's appeal CCI-0-05-3080 was granted at the director's level and CCI
officials were directed to address plaintiff's requests for a cane, a lower bunk chrono and surgery.
26 (Pl.'s Opp'n to Defs.' Mot. to Dismiss, Ex. D at 4.)

1   claim.  For example, plaintiff now claims he was satisfied with the actions taken in response to

2   his informal appeal.  Yet, he appealed the decision, stating "I am dissatisfied for the reasons

3   discovered by the doctor 8/5/05 from x-rays, that I have splintered and broken off, bone

4   cartiledge [sic], from my leg and ankle, which are now located under my foot, stabbing into the

5   heel of my foot.  I was never provided with a perscription [sic] pain medication. . . ." (Pl.'s

6   Opp'n to Defs.' Mot. to Dismiss, Ex. B at 1.)  Similarly, plaintiff now asserts that he was

7   satisfied with the partial grant following his first formal level appeal, yet he appealed that

8   decision to the second formal level of review claiming "I am requesting a second level review for

9   the said reason in A-section, my belief of my leg or foot was broken, avulsion fracture left fibula,

10  and the spur left heel, was caused by the block gun . . . I want both corrected." (Pl.'s Opp'n to

11  Defs.' Mot. to Dismiss, Ex. B at 2.)  After plaintiff received a denial at the second level of

12  review, he again appealed the decision to the director's level, claiming that the situation had not

13  changed and that "the case matter is the causality of physical, internal injuries (gun shot wound).

14  . . ." (Pl.'s Opp'n to Defs.' Mot. to Dismiss, Ex. B at 2.)

15          Plaintiff's argument would be more persuasive if he had in fact received all of the

16  relief he had requested.  See, e.g., Brady v. Attygala, 196 F. Supp. 2d 1016 (C.D. Cal. 2002)

17  (inmate was not required to proceed with additional appeals because prison officials had offered

18  and provided inmate with the relief he requested); Gomez v. Winslow, 177 F. Supp. 2d 977

19  (N.D. Cal. 2001) (same).  However, the record in this case demonstrates otherwise.  For example,

20  the Appeals Office at CSP-Sacramento only partially granted plaintiff's appeal SAC-05-

21  01686/CCI-06-0148 at the first formal level of review.  The Appeals Office instructed plaintiff to

22  follow-up at CCI after he was transferred there the next week.  At CCI, the Appeals Office

23  denied plaintiff's appeal at the second level of review.  Specifically, plaintiff's requests that

24  doctors remove his left heel spur and fix the fracture to his left fibula was denied.  Finally, the

25  Inmate Appeals Branch denied plaintiff's appeal at the director's level.  By that time, plaintiff

26  had only been put on a waiting list for a routine podiatry consult.  Nonetheless, at the director's

1  level it was determined that medical staff were providing plaintiff with adequate treatment.

2  Thus, plaintiff was required to pursue his appeals through the director's level prior to filing this

3  action because there continued to exist the "possibility of some relief for the action complained

4  of" for plaintiff.  Booth, 532 U.S. at 739.  See also Hazelton v. Alameida, 358 F. Supp. 2d 926

5  (C.D. Cal. 2005) (inmate had not exhausted his administrative remedies because he could have

6  obtained additional relief if he had pursued his appeal to the director's level).

7            Finally, plaintiff's claim that defendants waived their right to assert an affirmative

8  defense based upon his failure to exhaust claim is unpersuasive.  Defendants appear to have

9  inadvertently screened and rejected plaintiff's second level appeal on grievance SAC-05-

10 01686/CCI-06-0148 on November 14, 2005 on the grounds that the appeal needed to be sent to

11 CSP-Sacramento.  (Pl.'s Opp'n to Defs.' Mot. to Dismiss, Ex. E at 22.)  However, they notified

12 plaintiff on January 27, 2006 that his appeal was previously received from CSP-Sacramento and

13 was in process.  (Pl.'s Opp'n to Defs.' Mot. to Dismiss, Ex. E at 22 & 24.)  They also informed

14 plaintiff that the appeal had been logged as CCI-06-0148 with a due date of February 23, 2005.

15 Defendants then issued their decision with respect to that appeal on February 23, 2005.  Although

16 defendants made an initial screening error and took more than the 20 days to issue a decision,

17 neither defendants' error nor their delay in issuing a decision prejudiced plaintiff.  At no time did

18 plaintiff detrimentally rely on defendants' screening letter or delay in responding to his appeal.

19 In fact, plaintiff proceeded with the administrative grievance process and filed a timely director's

20 level appeal with respect to this grievance.

21            As noted above, defendants have the burden to raise and prove the affirmative

22 defense of failure to exhaust administrative remedies.  See Jones, 127 S. Ct. at 921; Wyatt, 315

23 F.3d at 1117-19 & nn.9 & 13.  Defendants have carried their burden.  Under the circumstances

24 set forth above, the court finds that plaintiff failed to properly exhaust his claim of inadequate

25 medical care to completion before filing this action.  Therefore, the defendants' motion to

26 dismiss should be granted.

1    Accordingly, IT IS HEREBY RECOMMENDED that defendants' February 28,

2    2007 motion to dismiss be granted.

3    These findings and recommendations are submitted to the United States District

4    Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

5    days after being served with these findings and recommendations, any party may file written

6    objections with the court and serve a copy on all parties.  Such a document should be captioned

7    "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

8    shall be served and filed within ten days after service of the objections.  The parties are advised

9    that failure to file objections within the specified time may waive the right to appeal the District

10   Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

11   DATED: June 1, 2007.

12

13   _____

     DALE A. DROZD
14   UNITED STATES MAGISTRATE JUDGE

15   DAD:9
     perk0760.57
16

17

18

19

20

21

22

23

24

25

26